# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEVON A. EVERETT, | Civil Action No. 2: 15-cv-1383 |
| Plaintiff, | |
| v. | United States Magistrate Judge Cynthia Reed Eddy |
| C/O HANN, C/O ROGERS, and LOUIS BOZELLI, | |
| Defendants. | |

## MEMORANDUM OPINION[1]

Presently before the Court is Defendants' Motion for Summary Judgment, with brief in support. (ECF Nos. 125 and 126). Plaintiff, Jevon A. Everett, has filed a Brief in opposition (ECF No. 135), to which Defendants have filed a Reply Brief. (ECF No. 136). The issues have been fully briefed and the factual record has been thoroughly developed. (ECF Nos. 126 and 128). For the reasons set forth below, the motion for summary judgment will be granted and the Clerk of Court will be directed to close this case.

## Background

Plaintiff, Jevon A. Everett ("Plaintiff" or "Everett") is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") currently confined at SCI-Greene. The events giving rise to this lawsuit occurred while Plaintiff was incarcerated at SCI-Fayette. Plaintiff brings suit pursuant to 42 U.S.C. § 1983 against three DOC employees: C/O Hann,

---

[1] On January 13, 2017, United States District Judge Arthur J. Schwab held an initial case management conference in this case, at which time all parties verbally consented to having the undersigned exercise jurisdiction over the matter. *See* Hearing Memo, ECF No. 115. Thereafter, Judge Schwab referred the matter back to the undersigned for all future proceedings, including trial.

1

C/O Rogers, and Unit Manager Louis Bozelli. After prescreening and the granting in part of Defendants' motion to dismiss, two claims remain: (i) First Amendment retaliation and (ii) Eighth Amendment failure to protect.

Plaintiff alleges that he has been the subject of retaliation due to his filing a lawsuit and grievances and that Defendants failed to protect him from his cellmate and issued him a false misconduct. Specifically, Plaintiff contends that on June 5, 2016, Michael Jones, Plaintiff's former cellmate, was placed back in Plaintiff's cell in retaliation for Plaintiff's filing of a lawsuit and grievances. According to Plaintiff, Jones was originally placed with Plaintiff for four days in December 2015, but "was removed due to incompatibility and conflict of cases."[2] (ECF No. 135-2 at 64). Jones was returned to Plaintiff's cell on June 5, 2016 because, according to Plaintiff, Defendants "wanted to get [Everett] . . . and that they were putting this rapist in my cell and wanted me to respond so that could write me up." (ECF No. 135-2 at 23). Plaintiff further contends that as soon as Jones walked into the cell, he stated that "CO Hann, wants us to fight, that is why he told your celly Ryan to move out, so we could fight and you can go to the hole (RHU)." Pl's Br. at 11.

It is not disputed that on July 31, 2016, there was an altercation between Plaintiff and Jones while in their cell. The parties dispute whether Plaintiff was the aggressor or the victim. Jones sustained injuries to his face and head which required hospitalization. At the time, the medical staff noted only superficial injuries to Plaintiff's right knuckles. Plaintiff now claims that he also suffered a hernia in his pelvic area from the altercation with Jones.

---

[2] In Grievance No. 635667, filed by Plaintiff on 7/22/2016, he described the conflict as follows: "my case conflicts with the celly housed with me do (sic) to he has a rape case and I'm charged with allegedly killing a rapist who allegedly raped my four year old daughter." (ECF No. 135-2 at 65). This grievance was denied as frivolous on 8/3/2016, three days after the incident between Jones and Plaintiff occurred.

Following the close of discovery, Defendants filed the pending motion for summary judgment. In response to the instant motion, Plaintiff submitted 68 pages of documents, which include his own Statements and Affidavits; the Affidavits / Declarations of fellow inmates Ronald G. Gilmore, Jr., Steven S. Wilson, Milton Johnson, Rondell Ellis, Khareem Little, and Abdul Murray; the Cell History for Plaintiff and Michael Jones; various documents regarding his grievances and misconduct; a newspaper article; and employee locator search results, with job descriptions, for Defendants Hann, Bozelli, and Rogers.

**Standard of Review**

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013) (citation omitted). In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. *See Montone v. City of Jersey City*, 709 F.3d 181 (3d Cir. 2013). Rather, the Court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id*. In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-movant. *Watson v. Abington Twp.*, 478 F. 3d 144,147 (3d Cir. 2007).

**Discussion and Analysis**

Plaintiff's claims for First Amendment retaliation and Eighth Amendment failure to protect are based on the incident with his cellmate Michael Jones on July 31, 2016. Defendants move for summary judgment as to each claim arguing that (1) Plaintiff has failed to exhaust his

3

administrative remedies, (2) Plaintiff has not established that Defendants were personally involved in the decision to place Jones in Plaintiff's cell; (3) there is insufficient evidence to establish a failure to protect claim; and (4) there is insufficient evidence to support a retaliation claim regarding the issuance of the misconduct report. These arguments will be addressed seriatim.

A. *The Administrative Exhaustion Requirement*

Defendants' first argument is that summary judgment should be entered in their favor because Plaintiff has not exhausted his administrative remedies.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. 42 U.S.C. § 1997e(a); *Booth v. Churner,* 206 F.3d 289, 291 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001). In order to fully exhaust remedies, a plaintiff must pursue a grievance through final administrative review. *Salley v. PA Dept. of Corr.,* 181 F. App'x 258, 264 (3d Cir. 2006).

Plaintiff argues that the administrative process was not available to him because prison officials prevented him from exhausting his administrative remedies. Specifically, Plaintiff alleges that the "staff refuse[d] to address" his grievances. The summary judgment record evidence contains a Request to Staff Member, dated 7/8/16 in which Plaintiff voices his concern to Unit Manager Hawk about Jones being placed back in his cell, to which she responds on July 15, 2016, that while his concerns are noted, at this time he is appropriately housed. (ECF No. 135-2 at 23, 39). The summary judgment record evidence also contains Grievance No. 635667, dated 7/22/16, in which Plaintiff again expresses his concern about Jones being placed in his cell. On 8/3/2016, his grievance was denied and it was explained to Plaintiff that "housing

4

inmates is an institutional decision and up to the discretion of the staff and the needs of the institution. There are no "separations" available from all rapists, as this grievant is requesting."

During his deposition, Plaintiff testified that he didn't believe he had appealed this decision because he was in RHU at the time of the decision and staff interfered with his ability to appeal. Such interference, if true, would render the administrative remedies "unavailable" to Plaintiff for purposes of the PLRA. *See Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).[3]

Although concededly a close call, for purposes of this opinion only, the Court finds that Plaintiff has presented sufficient evidence that he was prevented from complying with the grievance process and will be excused from the PLRA's exhaustion requirement as the process was unavailable to him. Accordingly, the Court will proceed to review Plaintiff's claims on the merits.

B.   *Retaliation*

Plaintiff claims that Defendants violated his First Amendment rights by retaliating against him for filing a lawsuit and grievances. He asserts two instances of retaliation: (1) Defendants placed Jones, his former cellmate, back in his cell who then attacked him; and (2) Defendant Rogers issued a falsified misconduct report against him. Retaliation claims are judged against exacting legal standards. Merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or

---

[3]   He also contends that he filed grievances on June 5, 2016, after Jones was placed in his cell; according to Defendants, however, there is no record in the Department's grievance records of any grievances filed by Plaintiff on that date.

motivating factor in the decisions to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). If the plaintiff proves these three elements, the burden shifts to the defendant to prove by a preponderance of the evidence that it "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002).

    1.    <u>Placement of Jones in Plaintiff's cell</u>

Plaintiff makes various allegations against Defendants regarding the placement of Jones in his cell. In response, Defendants argue that they did not take any adverse action him as they were not involved in the decision to place Jones in Plaintiff's cell. This argument is well taken.

Assuming that Plaintiff established that he engaged in constitutionally protected conduct (filing a lawsuit and grievances could constitute protected activity), *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981), there is no evidence that any of these Defendants were responsible for placing Jones in Plaintiff's cell in June of 2016.

As Plaintiff acknowledges, normally it is the Unit Managers who approve cell moves and Carey Hawk was the Unit Manager in June of 2016. *See* P's Br. at 17. (ECF No. 135). Plaintiff raised his concerns about Jones being celled with him to Unit Manager Hauk on July 8, 2016. (ECF 138-2). On July 15, 2016, Hauk replied, "Your concerns have been noted. At this time you are appropriately housed. When space becomes available you may be considered for a move then." *Id.*

The summary judgment record evidence reflects that while Defendant Bozelli was the Unit Manager of B block in December 2015 (when Jones was first placed in Plaintiff's cell),[4] he voluntarily left B block on March 21, 2016. He is currently the Unit Manager of E Block. As

---

[4] In his Declaration, Bozelli states that he does not recall being involved in the decision to cell Jones and Plaintiff together the first time, between December 4 and 8, 2015. (ECF No. 128, at 128, ¶ 6).

6

such, he was not involved in celling Plaintiff and Jones together the second time as he was not the Unit Manager of B block at that time. Plaintiff, however, responds

> Lou Bozelli is a Unit Manager for SCI-Fayette and holds many other titles such as a member of PRC (Program Review Committee) these two titles are prominent position for which they stand out. These two positions have held a superior influence on prisoners and facility as they are known to control the daily activities and the running of the facility both in Population and custody whether Administrative, Disciplinary or other, these position are easily abused. . . .

P's Br. at 13. (ECF No. 135).

Aside from Plaintiff's own suspicions and suppositions, which are not enough to survive summary judgment, there is no evidence in the record that would suggest that Bozelli had any personal involvement in the decision to place Jones in Plaintiff's cell in June of 2016.

Similarly, Officer Hann states in his Declaration that in June of 2016, he was a Corrections Officer 1 assigned to B Block on the 6 – 12 shift. He avers that the placement of inmates is usually a decision made by the Unit Manager, who was Carey Hawk at the time of the incident which gives rise to this lawsuit. Officer Hann does not recall having any input in placing Plaintiff and Jones together in the same cell. Hann last worked on B Block on June 14, 2016, when he suffered a work injury. He was not working at the institution on the date of the altercation between Plaintiff and Jones. Declaration of Kevin Hann (ECF No. 128, at 130 – 132).

In response, Plaintiff states that his former cell mate, Ryan Brown, told him that Defendant Hann told Brown that he was being moved to another cell, because "I'm after your celly Everett, he's filing grievances and lawsuits and I need you out of the way so I can get him." P's Br. at 10. (ECF No. 135). Plaintiff further states that Brown told him that Hann was going to "put that same inmate back into your cell so he (Michael Jones) could fuck you up!" Id. Plaintiff, however, has provided no support for his statements. He states that Brown would

7

not write an affidavit because "he was scared to write the affidavit because he wanted parole and that Hann, could hurt his chances of Parole. Ryan also stated that he feared the same retaliation Plaintiff had experienced and said I don't need that while I'm here." *Id*.

Unfortunately for Plaintiff, Brown's alleged statements are not sufficient to withstand summary judgment scrutiny. Only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment. Plaintiff, as the non-moving party, may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality (i.e., depositions, answers to interrogatories and admissions), that a trial worthy issue exists. *Celotex v. Catrett*, 477 U.S. 317, 322-24 (1986). Plaintiff has not come forward with evidence sufficient to convince a reasonable factfinder to find all of the elements of his prima facie case; rather he relies on mere allegations, which is insufficient. *See Blunt v, Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Accordingly, there is no summary judgment evidence that would be admissible at trial that suggests that Defendant Hann had any personal involvement in the decision to place Jones in Plaintiff's cell in June of 2016.

The same is true with Defendant Rogers. During the relevant time period, he was assigned to B Block on the 10 p.m. -6 a.m. or night shift. In his Declaration, he avers that he had no role in placing Plaintiff and Jones in the same cell as that decision would be made by other staff on other shifts.

Plaintiff responds that Defendant Rogers is a "subordinate officer underneath Bozelli. They are working together on a daily basis in order to maintain RHU and Administrative custody inmates in and out of the Hole." Pl's Br. at 14. However, in his Declaration, Rogers states that he worked on a different shift than Bozelli, that he had very little interaction with Bozelli, and that he did not report to him. Declaration of Rogers, ¶ 4 (ECF No. 125 at 134).

There is no evidence in the record that would suggest that Rogers had any personal involvement in the decision to place Jones in Plaintiff's cell in June of 2016.

Accordingly, even if Plaintiff could establish an underlying violation of his constitutional rights, these Defendants would nonetheless be entitled to summary judgment.

   2.   Misconduct Report

Plaintiff contends that Defendant Rogers further retaliated against him by filing a false misconduct report for assault following the altercation between Plaintiff and Jones. A misconduct report is legitimate so long as it is issued for "reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. According to Rogers, the altercation between Everett and Jones

> occurred at the start of my shift. I was doing rounds on B block and at BB 1028 cell, when I saw inmate Everett striking Jones, while Jones was lying on the ground in front of the cell door. Everett was standing over top of Jones. I never saw Jones strike Everett and Everett was the aggressor. Jones is an older inmate.

Declaration of Rogers, ¶ 5, 7. Further, Rogers states in his Declaration that

> There is no truth to inmate Everett's assertions that the misconduct that I issued was false or that Unit Manager Bozelli or anyone else directed me to issue the misconduct to Everett. I issued the misconduct, because I saw Everett assault inmate Jones. I never told Everett that the misconduct was false or apologized to him. I did not retaliate against Everett in any way.

*Id*. at ¶ 10. Plaintiff was found guilty of the misconduct and placed in the restrictive housing unit for 90 days.

Defendants cite unpublished Third Circuit opinions, *Nifas v. Beard*, 374 F. App'x 241 (3d Cir. 2010), *cert. denied*, 563 U.S. 941 (2011), and *Romansky v. Stickman*, 147 F. App'x 310 (3d Cir. 2005), for the proposition that retaliatory-disciplinary claims fail when there is "some evidence" supporting a guilty finding on the misconduct charge. Defs' Br. at 15. However, in evaluating the legitimacy of a misconduct report, this Court must consider "the quantum of

9

evidence of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them." (emphasis added). *Watson v. Rozum,* 834 F.3d 417 (3d Cir. 2016), petition for cert. filed (U.S. Mar. 7, 2017)(No. 16-1075). A finding of misconduct must include "a meaningful written statement of the evidence relied on and the reasons for the action taken." *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982).

Here, the summary judgment record reflects that Rogers charged Plaintiff with assault based on his own personal observations of Plaintiff striking Jones, while Jones was lying on the ground. The misconduct conviction is supported by a written statement of the evidence relied on by the hearing examiner in concluding that Plaintiff was guilty of assault. *See* Disciplinary Hearing Report (ECF No. 128 at 137 ("The examiner finds the c/o's report and eye witness account to be clear and credible."). Given the force of the evidence that Plaintiff was guilty of assault, the Court finds that the misconduct was legitimate and not retaliatory, and summary judgment will be granted as to this claim.

C. *Failure to Protect*

Plaintiff alleges that Defendants violated the Eighth Amendment by failing to protect him from an attack by his cellmate. As the Court has already determined, Plaintiff has not brought forward sufficient evidence of personal involvement on the part of any of these Defendants, so any claim against them for failure to protect must fail. Even if there was evidence of personal involvement, Plaintiff's attempt to impose liability on these Defendants under the Eighth Amendment also fails.

The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S.

10

825, 833 (1994). The United States Supreme Court has held that it is "not, however, every injury suffered by one prisoner at the hands of another than translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To survive summary judgment, Plaintiff needs to point to evidence in the record that Defendants both knew of and were deliberately indifferent to an excessive risk to his safety. *See Beers-Capitol v. Whetzel,* 256 F.3d 120, 131 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The test for deliberate indifference is twofold: To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. The Court finds that Plaintiff has failed to adduce evidence to show that Defendants operated with the requisite mindset.

Here, there is no indication in the record that Defendants made the inference that an excessive risk was present. Plaintiff and Jones had been celled together in December of 2015 without incident. Defendants each indicated that Jones was older and not known to be aggressive. There were no longstanding, pervasive, well-documented or previously noted tensions between Plaintiff and Jones. *Farmer*, 511 U.S. at 842. Nor is there any indication in the record that Plaintiff communicated to these Defendants his concern or a specific fear about being celled with Jones again.

The Court acknowledges that the factual assertions of the parties differ as to who instigated the altercation between Jones and Plaintiff. That dispute, however, is not material to Plaintiff's claims. *See* Fed.R.Civ.P. 56(a). Even assuming that Plaintiff was attacked by Jones, Plaintiff has not pointed to evidence of deliberate indifference.

Thus, the Court concludes that summary judgment is warranted as the record is void of evidence to permit a reasonable finder of fact to infer that Defendants both knew and intentionally disregarded an excessive risk to Plaintiff's safety.

## Conclusion

For the reasons stated above, the Motion for Summary Judgment will be granted. A separate order follows.


DATED: June 20, 2017

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge


cc:    JEVON A. EVERETT
HW 1387
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

Raymond W. Dorian
Pennsylvania Department of Corrections
(via ECF electronic notification)